# Berkley *v.* Maxwell Motor Sales Corporation, Appellant.

*Contract—Sale of automobiles—Principal and agent—Bonus on sales.*

Where a contract between a manufacturer of automobiles and a seller of automobiles provided that the seller should give a written order for automobiles which he would require upon a form provided by the manufacturer between the date of the agreement and a subsequent date mentioned, and annually thereafter, at least thirty

days before the date mentioned in each year during the continuance of the agreement, and the contract further provided that the manufacturer in addition to the commissions should pay a bonus of ten dollars per car for each car taken payable within sixty days after the date mentioned, with privilege to each party to cancel the agreement at any time upon notice, and the manufacturer cancels the agreement before the expiration of a year, the seller has a right to recover the bonus upon the cars which he had sold, and receive payment of such bonus within sixty days after the date of the cancellation of the contract.

Argued April 8, 1918.    Appeal, No. 115, April T., 1918, by defendant, from order of C. P. Somerset Co., May T., 1917, No. 64, making absolute rule for judgment for want of a sufficient affidavit of defense in case of E. M. Berkley and F. W. Floyd, partners doing business as the Meyersdale Auto Company v. Maxwell Motor Sales Corporation.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Affirmed.

Rule for judgment for want of a sufficient affidavit of defense.

RUPPEL, P. J., filed the following opinion:

Plaintiff's statement of demand claims to recover for three separate items.    For one of these items judgment was tendered in the affidavit of defense and accepted by the plaintiff and paid.    Another of the items is abandoned in the motion for judgment, plaintiff admitting that it cannot recover.    This reduces plaintiff's claim to the single item of $210, spoken of as a cash bonus of $10 per car for twenty-one cars sold under the contract. Defendant denies liability for this claim on two grounds: First, that this bonus was only to be paid in case the plaintiff sold the entire number of cars specified in the contract during the year the contract was in existence, and not having sold the number of cars, and in other respects not having complied with the contract, plaintiff is not entitled to recover    And second, that even if

plaintiff be entitled to recover, this claim, by the terms of the contract, was not to be paid by the defendant until sixty days after the expiration of the year during which the contract was to run, and that therefore the suit has been prematurely brought.

The parties entered into a written article of agreement dated the 7th of July, 1916, by which the plaintiff was to sell certain automobiles for the defendant at prices therein stipulated. By the terms of this agreement the plaintiff agreed to order from the defendant touring cars upon a monthly schedule, during July, 1916, twelve cars, August, September and October, each six cars, etc., until in June, 1917, the total should make seventy cars. The prices to be paid by the plaintiff for these cars were fixed by this contract. Then it was further provided that if the plaintiff "(a) take and pay for the cars specified in the above schedule in the quantities and months shown, (b) settle our parts account each month, (c) make weekly reports as required by paragraph 8i of our sales agreement, he will receive a cash bonus of $10 per car for each car taken under this agreement including all cars in excess of above schedule, said bonus to be paid within sixty days after June 30, 1917, after deducting any amount due you from us."

The 13th paragraph of the article of agreement reads:

"This agreement shall continue in force and govern all transactions between the parties hereto until cancelled, it being agreed that either party shall be at liberty to cancel and annul this agreement at any time upon written or telegraphic notice to the last known address of the other party; and said cancellation shall also operate as a cancellation of all orders for automobiles, parts or attachments which may have been received by the company," etc.

The plaintiff's statement alleges that on the 27th of September, 1916, the defendant cancelled the agreement without assigning any reason therefor. In the plaintiff's statement it is averred that plaintiff sold 24 automobiles.

This is denied in the affidavit of defense, and it is alleged that while 24 were ordered, only 21 were accepted by the plaintiff and sold, and plaintiff now admits that this statement is correct; that the three cars which had been shipped were not delivered to the plaintiff, but were returned to the defendant, and no claim is now made by either party for or on account of those three cars. Defendant admits the cancellation of the agreement as averred by plaintiff, but assigns as a reason therefor that J. E. Kelly, who was a member of the plaintiff firm at the time the contract was entered into resigned and retired from said firm, and that for that reason the defendant availed itself of the clause in the agreement, 8d, which reads:

"That he will not assign this agreement nor any rights hereunder without the written consent of the company, and that if he makes any change in any car supplies by the company, the liability of the company under its warranty shall cease."

The plaintiff company was a general partnership and the retirement of one member from the firm was not an assignment within the meaning of this clause in the article of agreement. Furthermore, defendant did not give as a reason for its cancellation to the plaintiff company the retirement of Kelly from the partnership; but the defendant had the right under the terms of the agreement to cancel at any time without assigning any reason therefor; and the rights of the parties under the contract as cancelled must be determined from the language of the agreement itself. Under these facts, is the plaintiff entitled to the additional $10 per car as provided in this agreement? While the word "bonus" is used in the agreement, it is manifest from the entire agreement itself that the parties had in view that in addition to the commission as fixed by the list price of the automobiles, as attached to the agreement, the plaintiff was to receive an additional compensation of $10 per car, unless through some fault of the plaintiff, some violation of the contract, some act on

422 BERKLEY *v.* MAXWELL M. S. CORP., Appellant.

its part, its right to such claim was defeated. That the contract must be construed by the court in the light of all the facts as revealed by the agreement is well established. The intention of the parties is to be gathered from all the circumstances as recited in the agreement. From the facts as alleged in plaintiff's statement and admitted in the affidavit of defense, no default can be charged upon the plaintiff. The plaintiff performed all the duties imposed upon it by the terms of the contract. If the defendant's contention be correct, then it would have had the right to have shipped to the plaintiff all the cars mentioned in the schedule up until May or June, 1917, save the last car, and then cancel the contract and say to the plaintiff "as you did not receive 70 cars, only 69, you are not entitled to the additional $10 charge." This would be so grossly inequitable that no court would attempt to sustain such a construction; but the same principle applies when the defendant at an earlier period cancels the contract and denies liability.

"And in order to get at the true meaning of the particular clause in controversy, we must advert to the situation and relation of the parties, the subject-matter of their agreement, and all the other provisions of the instrument": Williamson v. McClure, 37 Pa. 402; Bickford v. Cooper, 41 Pa. 142; Bowman v. Bradley, 151 Pa. 351; Chesapeake & Ohio Canal Co. v. Hill, 15 Wallace 94 (21 Law Ed. 64); Russell v. Allerton, 15 N. E. Rep. 391.

Responsibility for the failure to carry out the contract must rest upon the defendant by reason of the cancellation, and it cannot therefore take advantage of any default occasioned by its own act.

"It is necessary for the plaintiff to prove one of two things, either that he has fully complied with his contract, or he must satisfy the jury that he was prevented from performing by the failure of the defendant to pay according to the stipulation in the agreement. In the latter case, he will be allowed for his labor," etc.: Alexander v. Hoffman, 5 W. & S. 382.

418, (1918).]          Opinion of Court below.

"The defendants then, by their own act, defeated the performance of the contract, and ought not to set it up as a pretext for holding the money advanced" : Feay v. DeCamp, 15 S. & R. 227.

"In some cases, when a special contract has been partially executed and then rescinded, the law raises a promise that he who has enjoyed benefits upon it will pay for what he has enjoyed. In such a case it requires but little evidence to show that such was the positive understanding of the parties" : Knauss v. Shiffert, 58 Pa. 152.

Had the plaintiff rescinded or cancelled the contract without legal or equitable grounds, no recovery could have been had until the time stipulated in the agreement, but a different rule prevails where the defending party has caused the cancellation or rescission of the agreement; and the rule there is that the party not at fault may immediately upon rescission or cancellation of the agreement recover whatever is due him under the contract even though the time for payment has not yet arrived.

Mt. Joy v. Metzgar, 9 Philadelphia 10: "Where two persons enter into a contract, and after a part performance by one, the other denies its existence, and gives notice of his intention to disregard it, the party not in default may at his option perform fully and enforce the contract, or consider it at an end, and recover for part performance" : Moorhead v. Fry, 24 Pa. 37; American Life Insurance Co. v. McAden, 109 Pa. 399; Jones v. Brown, 167 Pa. 395; Ferris v. Spooner, 5 N. E. Rep. 773.

"But when the defendant does repudiate the contract and refuses on its part to fulfill its terms, it cannot be heard to say that the other party must himself be bound by it, and must await the expiration of the term of credit provided for by it before any action can be maintained under it" : Nichols v. Scranton Steel Co., 33 N. E. Rep. 561; Dugan v. Anderson, 36 Md. 567, 11 Am. Rep. 509; Jewett v. Brooks, 134 Mass. 505, 6 Cyc. 698.

424 BERKLEY *v.* MAXWELL M. S. CORP., Appellant.

Opinion of Court below—Opinion of the Court. [70 Pa. Superior Ct.

From these and other authorities which might be cited, it is plain that the action for the recovery of this additional sum of $10 per car is not premature, and while it is spoken of as a bonus in the contract, it is in reality a part of the commission to be received by the plaintiff for the sale of the defendant's cars.

And now, to wit, December 20, 1917, the motion for judgment in default of a sufficient affidavit of defense is sustained, and judgment is directed to be entered in favor of the plaintiff for the sum of two hundred and ten ($210) dollars, with interest from the commencement of the action.

*Error assigned* was order making absolute rule for judgment for want of a sufficient affidavit of defense.

*E. J. Kent,* with him *E. E. Kiernan,* for appellant.

*C. W. Walker* and *Alexander King,* for appellee.

OPINION BY PORTER, J., October 12, 1918:

The court below held the affidavit of defense to be insufficient and entered judgment in favor of the plaintiffs, from which judgment the defendant appeals. The opinion of Judge RUPPEL of the court below so fully vindicates the conclusion at which he arrived that little can with profit be added. The contract between the parties and the order for automobiles given by the plaintiffs to the defendant, which by its very terms became a part of the general contract, clearly indicate that it was the intention of the parties that there was to be a settlement of the business done under the contract at the end of each season and that the plaintiffs were to be paid a bonus on the cars that they sold within sixty days after the end of the season. The contract was dated July 7, 1916, and required that the plaintiffs upon the execution of the contract should give a written order, upon a form provided by the defendant company,

for, "his requirements between the date of the agreement and June 30, 1917, and annually thereafter at least thirty days before the thirtieth day of June in each year during the continuance of this agreement, the distributor shall give the company a similar order, covering the distributor's requirements for the ensuing twelve months, specifying a number of cars satisfactory to the company......all of which orders are and shall be part thereof." The order which the plaintiffs gave, at the execution of the contract and upon the blank provided by the defendant company, specified the number of cars which the plaintiffs would require for each month down to the 30th of June, 1917, and provided that the defendant company should pay a bonus of ten dollars "per car for each car taken under this agreement......said bonus to be paid within sixty days after June 30, 1917, after deducting any amount due from us." This was equivalent to saying that the bonus should be paid within sixty days after the close of "the season." The defendant, on September 27, 1916, cancelled the contract, which it had a right to do under the covenants thereof, and thereupon it became the duty of the plaintiffs to return to the defendant any cars which they then had in their hands. The contract primarily contemplated doing business for the entire season, the end of which it fixed for the 30th day of June in each year, and the order provided that the bonus should be paid within sixty days after the same date. We are of opinion that when the defendant company exercised its right to terminate the contract on the 27th day of September, 1916, the effect was to make that date the end of "the season," and the bonus upon the cars which had been sold became payable within sixty days after that date. This action was, therefore, not prematurely brought.

The judgment is affirmed.